FILED
COURT OF APPEALS
DIVISION II

2014 AUG 19 AM 9: 35

STATE OF WASHINGTON
BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43603-5-II |
| Respondent, | |
| v. | |
| | PART PUBLISHED OPINION |
| DAVID CLYDE DANIELS, | |
| Appellant. | |

HUNT, J. — David Clyde Daniels appeals his jury trial convictions for promoting commercial sexual abuse of a minor (PCSAM), second degree promoting prostitution, and fourth degree assault. He argues that his convictions for PCSAM and second degree promoting prostitution constitute double jeopardy because the offenses are the same in law and fact. In the unpublished portion of this opinion, we address Daniels' statement of additional grounds for review (SAG), where he asserts that (1) his trial counsel ineffectively assisted him by failing to call defense witnesses, failing to impeach the victim on cross-examination, and failing to object to the second degree promoting prostitution charge on double jeopardy grounds; (2) the evidence was insufficient to support his convictions; and (3) he was subject to vindictive prosecution by the State. Holding that there is no double jeopardy because the legislature intended separate punishments for promoting commercial sexual abuse of a minor (PCSAM) and promoting prostitution, and rejecting Daniels' SAG claims, we affirm all three convictions.

FACTS

I. CRIMES

In early January 2012, David Clyde Daniels stopped and spoke with 15-year-old NJ[1] as she walked home from a gas station. NJ intimated that she was 19 years old and gave Daniels her phone number. Some days later, Daniels called her, and they agreed to meet at Daniels' cousin's home. Daniels believed NJ to be 19 years old. He taught her how to post an ad on Backpage.com[2] and recruited her as a prostitute. Over the next several weeks, Daniels had NJ prostitute herself on his behalf, including one full day on Seattle's Aurora Avenue in King County. While NJ "walk[ed]"[3] Aurora that night, however, Daniels learned from a friend that NJ had lied about her age, which she later admitted was 15. 2 Verbatim Report of Proceedings (VRP) at 30.

Despite then knowing that NJ was underage, Daniels continued to prostitute her around Tacoma. He drove her to and from the areas she would "walk," shadowed her on the street,

---

[1] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered that initials will be used in the body of the opinion to identify the juveniles involved.

[2] Backpage.com is an online classified website, similar to Craigslist. It includes a category of "adult" advertisements that critics say serve as a conduit for illegal activities, including prostitution, even though Backpage.com officially prohibits illegal services. *See* Deborah Feyerick & Sheila Steffen, *A lurid journey through Backpage.com*, CNN (May 10, 2012, 3:59 PM), http://thecnnfreedomproject.blogs.cnn.com/2012/05/10/a-lurid-journey-through-backpage-com/.

[3] According to NJ, "walk" meant "walk[ing] until someone picks us up" and that if someone stopped and expressed interest in engaging in sexual activity, she was to "see what they're talking about, find out if they're cops or not, and then go ahead" and make a "date." 2 VRP at 23-24.

rented motel rooms for her and her "dates," and kept all of the money she earned. 2 VRP at 33, 34.

On February 7, Daniels drove NJ to the Spanaway Loop area of Pierce County for a "date" with a "John" who had contacted her through Backpage.com. 2 VRP at 41-42. After performing the sex act and receiving payment, NJ called Daniels to pick her up. Daniels arrived with another minor female, FN, in his car. NJ gave Daniels only half of her $90 earnings and did not tell him about the other $45, which she kept. When NJ got into the car, Daniels demanded her phone. When NJ refused, Daniels grabbed the phone from her, removed the battery, told FN to drive, got into the backseat with NJ, and ordered her to remove her clothes (apparently worried that she was "wired"). 2 VRP at 46. When NJ again refused, Daniels tore off her jacket, pinned her to the floor of the car, and hit her several times in the jaw. Daniels later let NJ out of the car and drove off with FN.

The next morning, NJ went to her former high school and reported to the assistant principal that another student had taken her cell phone. Tacoma Police Department School Resource Officer Gerald Turney interviewed NJ, who said that FN was in possession of NJ's cell phone, that David Daniels had been with FN when it was taken, and that they had been in a red Lincoln town car. Turney observed injuries on NJ, including bruising of her jaw and a cut on her lip.

Based on this information, Turney issued a countywide message advising law enforcement that probable cause existed for the arrest of Daniels for robbery, kidnapping, pimping, and unlawful imprisonment. That afternoon, Tacoma Police Department Officer Randy Frisbie detained Daniels after a felony traffic stop of his red Lincoln town car.

3

## II. PROCEDURE

The State charged Daniels with PCSAM (count 1), second degree robbery (count 2), unlawful imprisonment (count 3), fourth degree assault (count 4), and second degree promoting prostitution (count 6).[4]

### A. Trial

Officers Turney and Frisbie testified to the facts previously set forth. CH testified that he had attended high school with NJ during the 2009-10 school year. In "November(ish)" 2011, CH had seen a light-skinned girl he believes was NJ with Daniels in a white truck at a gas station. 1 VRP at 55. In January 2012, he spoke with Daniels on the phone and informed him that NJ was no older than 15 or 16, which revelation seemed to have surprised Daniels.

In addition to the facts previously set forth, NJ testified that she was 15 years old when Daniels stopped her to talk outside a gas station in January 2012. She admitted having lied when she told him that she was 19 years old. She had agreed to meet Daniels at his cousin's house where Daniels and another male took pictures of her in her underwear, which Daniels helped NJ post on Backpage.com, with a description of herself and his contact information. When calls started coming in a few hours later, Daniels told NJ the prices of certain acts she was to perform.

#### 1. Promoting prostitution in Seattle, late January 2012

NJ testified that the next day Daniels and CH took her and another girl to "walk" Aurora Avenue in Seattle. 2 VRP at 23. Daniels either followed NJ on the street or waited in a motel room at the nearby Seals Motel, where "dates" could occur. 2 VRP at 24. That night NJ

---

[4] Initially, the State also charged Daniels with second degree driving while in a suspended or revoked status (DWLS) (count 5). But it later dropped that charge.

performed 13 sex acts for a total of about $400, all of which Daniels forcibly took from her during a strip search. When NJ returned from "walking" later that night, Daniels confronted her about her age in the motel bathroom. 2 VRP at 30. She admitted to Daniels that she was only 15.

### 2. PCSAM in Tacoma, late January/early February 2012

NJ also testified that, after learning that she was only 15 years old, Daniels continued to prostitute her for another three weeks, answering calls from Backpage.com and having her "walk" in Tacoma on Pacific Avenue and Tacoma Avenue. 2 VRP at 33. For example, NJ described a day in "late January, beginning of February," that she had spent "walking" on Pacific Avenue: Daniels drove her to "the strip," provided a motel room, and waited at a McDonald's while she had sex with a customer for money. 2 VRP at 34. NJ called Daniels to let him know when she had picked up a customer for a sexual interaction.

NJ testified about another "date" on February 7, 2012: After a "John" contacted her through Backpage, Daniels dropped her off and picked her up from the "date" in the Spanaway Loop area. 2 VRP at 41. NJ further testified about the incident in the car as described above, when Daniels had become violent with her.

### B. Jury Instructions and Closing Argument

### 1. PCSAM instructions

The trial court first instructed the jury about PCSAM:

> A person commits the crime of promoting commercial sexual abuse of a minor when he knowingly advances commercial sexual abuse of a minor or profits from a minor engaged in sexual conduct.

> Commercial sexual abuse of a minor means a minor receives compensation for engaging in sexual conduct

Clerk's Papers (CP) at 28 (Jury Instruction 7). Instruction 8 defined a "minor" as any person under 18 years of age. CP at 29. Instruction 9 provided the jury with the statutory definitions of "sexual conduct," "sexual contact," and "sexual intercourse." CP at 30; *see also* RCW 9A.44.010 (definitions). Instruction 10 was the "to convict" instruction for PCSAM:

> To convict the defendant of the crime of promoting commercial sexual abuse of a minor, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the period between the 1st day of January, 2012, and the 7th day of February, 2012, the defendant knowingly advanced commercial sexual abuse of a minor or profited from a minor engaged in sexual contact; and
>
> (2) That any of these acts occurred in the State of Washington.

CP at 31 (Jury Instruction 10).

> The trial court also provided a unanimity instruction for this PCSAM charge:

> The State alleges that the defendant committed acts of promoting commercial sexual abuse of a minor on multiple occasions. To convict the defendant of promoting commercial sexual abuse of a minor, *one particular act of promoting commercial sexual abuse of a minor must be proved beyond a reasonable doubt, and you must unanimously agree to which act has been proved.* You need not unanimously agree that the defendant committed all the acts of promoting commercial sexual abuse of a minor.

CP at 32 (Jury Instruction 11) (emphasis added).

### 2. Second degree promoting prostitution instructions

The trial court also instructed the jury on second degree promoting prostitution. Instruction 22 stated, "A person commits the crime of promoting prostitution in the second degree when he or she knowingly profits from or advances prostitution." CP at 43. Instruction

provided statutory definitions for "prostitution," "advanced prostitution," and "profited from prostitution." CP at 44; *see also* RCW 9A.88.060 (definitions). The "to convict" instruction provided in relevant part:

> To convict the defendant of the crime of promoting prostitution in the second degree, as charged in Count VI each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the period between the 1st day of January, 2012, and the 7th day of February, 2012, the defendant knowingly profited from prostitution or advanced prostitution, and
>
> (2) That any of these acts occurred in the State of Washington.

CP at 45 (Jury Instruction 24).

As with the PCSAM charge, the trial court provided the jury with a unanimity instruction for the promoting prostitution charge:

> The State alleges that the defendant committed acts of promoting prostitution on multiple occasions. To convict the defendant of promoting prostitution, *one particular act of promoting prostitution must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved.* You need not unanimously agree that the defendant committed all the acts of promoting prostitution.

CP at 46 (Jury instruction 25) (emphasis added).

### 3. Closing argument

In closing argument, the prosecutor specified certain acts for the jury to consider for each charge. For the second degree promoting prostitution charge, the prosecutor asked the jury to

consider only NJ's first night on Aurora Avenue in Seattle, when Daniels believed she was 19 years old[5]:

> Promoting Prostitution in the Second Degree, he's benefiting, profiting from her selling herself after he—I'm sorry, *before he learns that she's 15*. Because the promoting Commercial Sexual Abuse of a Minor has an age requirement. She told you, I lied and I told him I'm 19. Now he's promoting a prostitute because she's not a minor in his mind, right. So promoting prostitution, a benefit that he got prior to learning that makes him guilty of Promoting Prostitution in the Second Degree.

3 VRP at 14 (emphasis added).

For the PCSAM charge, the prosecutor asked the jury to consider the acts that had occurred *after* Daniels learned NJ's true minor age, 15[6]:

> If [NJ] is telling the truth, you believe these things actually happened, he's guilty of Promoting Sexual Abuse of a Minor because *he knew she was 15 years old after that date in Aurora and continued to profit from her selling herself.*

3 VRP at 13 (emphasis added).

### C. Verdict and Sentencing

The jury found Daniels guilty of promoting commercial sexual abuse of a minor (PCSAM) (count 2), fourth degree assault (count 4), and second degree promoting prostitution

---

[5] The only evidence of Daniels' promoting prostitution of NJ *before* he knew she was 15 was the single "walk[ing]" Aurora Avenue in Seattle in January 2012. 2 VRP at 57.

[6] NJ testified about two specific commercial sexual exploitations of her *after* Daniels knew she was 15, both in Tacoma: one day in "late January, beginning of February" "walking" on Pacific Avenue, 2 VRP at 34; and February 7, in the Spanaway Loop area of Pierce County, when she had sex with a "John" who had contacted her through Backpage.com, which incident ended in Daniels' assaulting NJ. 2 VRP at 41.

(count 6). Neither the State nor Daniels asked the trial court to merge the PCSAM and promoting prostitution convictions for sentencing purposes.[7] Daniels appeals his convictions.

ANALYSIS

PCSAM AND SECOND DEGREE PROMOTING PROSTITUTION NOT "SAME OFFENSE"

Daniels argues that his convictions for PCSAM and second degree promoting prostitution violate the constitutional prohibitions against double jeopardy because the jury could have based both convictions on the same criminal conduct. Because NJ was a minor, all of Daniels' conduct that promoted NJ's prostitution arguably violated both the promoting prostitution statute and the PCSAM statute. However, the State expressly elected in closing argument for the jury to consider only the Seattle activities before Daniels learned NJ was a minor in considering the promoting prostitution charge, and to consider only the Pierce County activities after Daniels learned NJ was a minor in considering the PCSAM charge. Under these circumstances, we hold that Daniels' convictions were not based on the same criminal conduct and, therefore, there was no double jeopardy.

The Fifth Amendment to the United States Constitution provides that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Mirroring this federal constitutional guarantee, Washington's State Constitution provides, "No

---

[7] Nor did Daniels raise a double jeopardy objection.

person shall . . . be twice put in jeopardy for the same offense."[8] WASH. CONST. art. I, § 9; *see also State v. Kier*, 164 Wn.2d 798, 803, 194 P.3d 212 (2008). Under these provisions, a defendant cannot be punished multiple times for the same criminal act. *See State v. Mutch*, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011).

The threshold question here is whether Daniels was convicted of multiple offenses based on the same criminal conduct.[9] *See State v. Peña Fuentes*, 179 Wn.2d 808, 824-26, 318 P.3d 257 (2014); *Mutch*, 171 Wn.2d at 662-66. "[I]f each count arises from a separate and distinct act, the defendant is not potentially exposed to multiple punishments for a single act." *Peña Fuentes*, 179 Wn.2d at 824. We will not find a double jeopardy violation when it is "manifestly apparent to the jury that each count represent[s] a separate act." *Peña Fuentes*, 179 Wn.2d at 824 (quoting *Mutch*, 171 Wn.2d at 665-66).

---

[8] Because Daniels did not raise the double jeopardy issue below, we treat this argument as falling within the RAP 2.5(a)(3) manifest constitutional error exception to the preservation requirement. "A double jeopardy claim is of constitutional proportions and may be raised for the first time on appeal." *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). Thus, we review de novo the double jeopardy argument he raises for the first time on appeal. *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010).

[9] When a defendant makes a double jeopardy argument, we normally determine whether the legislature intended multiple punishments in the particular situation. *Kier*, 164 Wn.2d at 804. Within constitutional boundaries, the legislature is empowered to "define criminal conduct and assign punishment to it." *Kier*, 164 Wn.2d at 803. "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *Kier*, 164 Wn.2d at 803-04 (internal quotations omitted) (quoting *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005)). Here, however, we need not engage in this legislative intent analysis because we hold that Daniels is being punished for two separate criminal acts, not twice for the same act.

Here, during NJ's testimony and closing argument, the State distinguished between different geographic locations (Seattle and Tacoma) and between different time periods (before and after Daniels knew the victim was underage) to support convictions for the two separate charges, promoting prostitution and PCSAM. In closing argument, the State made it clear that it was asking the jury to convict on the promoting prostitution charge based on Daniels' activities in Seattle before he knew that NJ was a minor, and asking the jury to convict on the PCSAM charge based only on Daniels' activities in Pierce County after he knew NJ was a minor.

Daniels argues that the State's election was insufficient to establish that the two convictions were based on separate criminal conduct, citing *Kier*.[10] But here, the evidence clearly distinguished between Daniels' separate criminal acts. One course of criminal activity occurred in Seattle before Daniels knew NJ was a minor. The other course of criminal activity occurred later in Pierce County, after Daniels knew NJ was a minor. The State's closing argument served to confirm this distinction, making it clear that the different criminal conduct supported convictions for different offenses. As a result, this case is more similar to *Peña Fuentes*, where our Supreme Court held that separate criminal conduct supported the defendant's

---

[10] Daniels argues that, according to *Kier*, 164 Wn.2d at 814, we should hold that the prosecutor's argument distinguishing Daniels' PCSAM and promoting prostitution charges was insufficient to relieve the ambiguity in the jury's verdict. The State charged Kier with robbery and assault for carjacking at gunpoint a vehicle occupied by a man and his son. *Kier*, 164 Wn.2d at 802. During closing argument, the State identified the man as the victim of the robbery and the son as the victim of the assault. *Kier*, 164 Wn.2d at 813. The Supreme Court held that (1) this closing argument did not constitute a "clear election" because the evidence at trial identified both the father and the son as victims of the robbery and the jury instructions did not specify that only the man was the robbery victim; and (2) as a result, the jury's verdict was ambiguous. *Kier*, 164 Wn.2d at 813, 814. Disagreeing, we distinguish *Kier* in the text above.

11

two convictions because the State clearly distinguished between the acts constituting one crime from the acts constituting the second crime. *Peña Fuentes*, 179 Wn.2d at 825-26.

In light of the State's differentiation between the two crimes with separate supporting acts committed during two clearly distinguished time periods—before and after Daniels learned NJ's young age—it is "manifestly apparent" that the jury convicted Daniels based on factually separate and distinct acts. *Peña Fuentes*, 179 Wn.2d at 824 (quoting *Mutch*, 171 Wn.2d at 665.) Accordingly, we hold that the conviction and punishment of Daniels for both PCSAM and second degree promoting prostitution did not constitute double jeopardy.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

STATEMENT OF ADDITIONAL GROUNDS

A. Effective Assistance of Counsel

In his SAG, Daniels asserts that his appointed trial counsel ineffectively assisted him by failing to call defense witnesses, failing to cross-examine the victim effectively, and failing to object to the State's filing of a second degree promoting prostitution charge. These assertions fail because Daniels does not show that defense counsel's actions were deficient or prejudiced him in any way. *State v. Emery*, 174 Wn.2d 741, 754-55, 278 P.3d 653 (2012) (citing *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

12

## B. Sufficiency of Evidence

Daniels next asserts that the State failed to put forward sufficient evidence to support his convictions, singling out in particular the State's testimonial evidence on which the State's case relied. This claim fails.

When a party challenges the sufficiency of evidence to support a criminal conviction, we must view the evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Gordon*, 172 Wn.2d 671, 680, 260 P.3d 884 (2011) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). This inquiry requires that "[a]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007) (quoting *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006)); *Salinas*, 119 Wn.2d at 201. "Credibility determinations are for the trier of fact and are not subject to review" on appeal. *State v. Mines*, 163 Wn.2d 387, 391, 179 P.3d 835 (2008) (citing *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)). We defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of the evidence. *State v. Notaro*, 161 Wn. App. 654, 671, 255 P.3d 774 (2011).

As its verdicts imply, the jury apparently found credible NJ's uncontradicted testimony about Daniels' sexually exploitive and assaultive actions, which determination we do not review on appeal. *Notaro*, 161 Wn. App. at 671. Moreover, NJ's testimony alone was sufficient to allow a reasonable trier of fact to find Daniels guilty beyond a reasonable doubt of PCSAM, second degree promoting prostitution, and fourth degree assault. Thus, viewing the evidence in

13

the light most favorable to the State, we hold that the evidence was sufficient to support the jury's verdicts.

## C. Prosecutorial Misconduct

Finally, Daniels asserts that he was subject to vindictive prosecution when the State amended the information to add the charge of second degree promoting prostitution shortly before trial. The record before us on appeal does not support this assertion; moreover, we note that prosecutors are vested with great discretion in filing criminal charges. *See State v. Korum*, 157 Wn.2d 614, 625, 141 P.3d 13 (2006).

We affirm.

_____
Hunt, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.

14