# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47121-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSHUA JONES, | |
| Appellant. | |

BJORGEN, C.J. — Joshua Jones appeals his convictions for promoting the commercial sexual abuse of a minor (two counts), second degree promoting prostitution (two counts), and violation of a protection order.  Jones argues that the trial court put him in double jeopardy by imposing multiple punishments for the same underlying offense when it sentenced him for both promoting the commercial sexual abuse of a minor and second degree promoting prostitution. He argues also that his attorney provided ineffective assistance of counsel by failing to move to sever his trial from that of his codefendant and by opening the door to introduction of highly prejudicial evidence of Jones's prior convictions.  In a statement of additional grounds (SAG), Jones argues that his attorney provided ineffective assistance of counsel by failing to raise a mistake of fact defense related to the age of the victims, the trial court erred by allowing his codefendant to claim a blanket Fifth Amendment privilege that prevented him from testifying at a pretrial hearing, and insufficient evidence supports two of his convictions.

We hold that (1) Jones was not exposed to double jeopardy because the legislature intended promoting the commercial sexual abuse of a minor and second degree promoting prostitution to be separate offenses, (2) Jones has not shown that he received ineffective assistance of counsel, (3) the trial court did not err by allowing Jones's codefendant to claim a

blanket Fifth Amendment privilege, and (4) sufficient evidence supports the convictions Jones challenges in his SAG. We also deny Jones's motion to file supplemental briefing concerning the unit of prosecution for the offense of promoting prostitution. Accordingly, we affirm Jones's convictions and sentence.

FACTS

Jones and his codefendant, Samuel Miles-Johnson, met two teenage girls, OL and TC, through a mutual friend in June 2013. The four of them went to a motel where they began to orchestrate a prostitution operation. Jones took photographs of OL, while Miles-Johnson took photographs of TC, to use in Internet advertisements for sexual services. Jones then posted Internet advertisements for sexual services incorporating the photographs.

Jones and Miles-Johnson told the girls that customers would call them in response to the advertisements, and the girls were to provide the customers with sexual services. Jones also explained to the girls how to find customers on the street and avoid police. Customers would also call Jones's and Miles-Johnson's phones, which they let the girls use to help set up paid "dates." Report of Proceedings (RP) at 532-34. Over the course of several days, both girls had numerous customers. The girls gave Jones and Miles-Johnson the money they earned.

OL's aunt's boyfriend saw the advertisements with pictures of OL and called to set up a faux date for a large sum of money. After setting up the date, he called police, who arrived at the motel, investigated the situation, and ultimately arrested Jones and Miles-Johnson. The State charged Jones with two counts of promoting the commercial sexual abuse of a minor, one for OL and one for TC; two counts of second degree promoting prostitution, again one for each of the girls; third degree rape of a child for allegedly having sex with OL; and attempted tampering with a witness and violation of a protection order for phone calls Jones made to OL after his

2

arrest. Jones and Miles-Johnson were charged as codefendants and set to be tried together. Before trial, OL and TC also brought a civil suit against Jones, Miles-Johnson, and others.

The State and the defendant jointly moved for six continuances, after which the defendant moved for two additional continuances. The reasons given for some of these continuances included time needed for negotiation of a plea deal for Miles-Johnson. Jones's attorney did not move to sever Jones's trial from Miles-Johnson's, and Miles-Johnson eventually pled guilty to the charges against him. In all, Jones's trial was delayed by 400 days, and the time from his arrest until trial was 460 days.

At a pretrial CrR 3.5 hearing, Jones called Miles-Johnson to testify. Miles-Johnson took the stand but immediately invoked his Fifth Amendment privilege and declined to answer any questions. The trial court heard argument from the parties regarding Miles-Johnson's invocation of a blanket privilege. Because it appeared that despite his guilty plea Miles-Johnson might still face charges in federal or King County courts arising from the same events, the trial court ruled that he could claim a blanket Fifth Amendment privilege.

The State moved before trial to declare evidence of Jones's prior convictions for promoting prostitution admissible under ER 404(b) to show a common scheme or plan or lack of accident or mistake. In response, the trial court ruled that the evidence would be admissible only in rebuttal if the defense claimed accident or mistake. At trial, Jones testified that he was present for the events but was uninvolved in any prostitution. The trial court revisited the admissibility of the prior convictions evidence in light of this testimony and ruled that the State could introduce evidence showing the details of those convictions in rebuttal. Following this ruling, Jones's attorney asked him to testify about the details of the prior convictions, opening the door

3

for the State to cross-examine him regarding the convictions. Jones's attorney did not request a limiting instruction regarding the jury's use of this evidence.

Following trial, the jury found Jones guilty of both counts of promoting the commercial sexual abuse of a minor, both counts of second degree promoting of prostitution, and violation of a protection order. It found him not guilty of third degree rape of a child and attempted witness tampering. The trial court sentenced Jones to 236 months total confinement, with all of his sentences running concurrently.

Jones appeals his convictions and sentence.

## ANALYSIS

### I. DOUBLE JEOPARDY

### A.    Multiple Punishments for Same Offense

Jones argues that his convictions for promoting the commercial sexual abuse of a minor and promoting prostitution violated his constitutional right against double jeopardy by imposing multiple punishments for the same offense.[1] We disagree.

Under both our federal and state constitutions, criminal defendants are protected against double jeopardy. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Among other elements, these rights prohibit courts from imposing multiple punishments for the same offense. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). However, the legislature may define offenses in such a manner that multiple punishments are imposed for the same underlying acts or conduct. *State v. Kelley*, 168 Wn.2d 72, 77, 226 P.3d 773 (2010). "[W]hen a single trial and multiple

---

[1] As Jones acknowledges, we held in *State v. Daniels*, 183 Wn. App. 109, 118-20, 332 P.3d 1143 (2014), that convictions for these two crimes did not subject the defendant to double jeopardy. However, *Daniels* does not control the resolution of this appeal, because the convictions at issue did not involve the same criminal conduct. *Id*. at 119.

punishments for the same act or conduct are at issue, the initial and often dispositive question is whether the legislature intended that multiple punishments be imposed." *Id*. As an issue of constitutional law, we review de novo a defendant's claim that a trial court has violated his rights against double jeopardy by imposing multiple punishments not intended by the legislature. *Id*. at 76.

To determine whether the legislature intended to create multiple offenses based on the same underlying acts or conduct, we first examine the statutory language for an express authorization of cumulative punishment. *Calle*, 125 Wn.2d at 776. Here, the statutes defining promoting commercial sexual abuse of a minor and second degree promoting prostitution do not address cumulative punishment. *See* RCW 9.68A.101; RCW 9A.88.080; RCW 9A.88.060. Therefore, we apply the "same evidence" rule of construction to determine legislative intent.[2]

Under the same evidence rule, we examine the legal and factual distinctions between offenses. "[T]he defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law." *Calle*, 125 Wn.2d at 777. Offenses are identical in law if the elements of both are the same. *Id*. Offenses are identical in fact if "proof of one offense would . . . *necessarily* also prove the other." *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983) (emphasis added). If each includes elements not included in the other, they do not share legal identity. *Calle*, 125 Wn.2d at 777. If proof sufficient to convict of one

---

[2] The same evidence rule is the primary method of determining legislative intend to impose cumulative punishments for the same underlying acts or conduct, but it is not the only method. It "should not be controlling where there is a clear indication of contrary legislative intent." *Calle*, 125 Wn.2d at 778. The State argues that the legislature indicated its intent to create separate offenses by codifying the crimes at issue in separate titles of Washington's criminal code and assigning different felony classifications and seriousness levels to each. However, the State does not cite to any authority showing that such codification and classification differences are especially probative of legislative intent. At best, we find this argument to be of limited persuasion.

offense is not necessarily sufficient to convict of the other offense, they do not share factual

identity. *Id*.

State statutes defining both crimes are similar in structure and language. Promoting

commercial sexual abuse of a minor is defined as follows:

> (1) A person is guilty of promoting commercial sexual abuse of a minor if he or she knowingly advances commercial sexual abuse or a sexually explicit act of a minor or profits from a minor engaged in sexual conduct or a sexually explicit act.
> . . . .
> (3) For the purposes of this section:
> (a) A person "advances commercial sexual abuse of a minor" if, acting other than as a minor receiving compensation for personally rendered sexual conduct or as a person engaged in commercial sexual abuse of a minor, procures or solicits customers for commercial sexual abuse of a minor, . . . provides persons or premises for the purposes of engaging in commercial sexual abuse of a minor, operates or assists in the operation of a house or enterprise for the purposes of engaging in commercial sexual abuse of a minor, or engages in any other conduct designed to institute, aid, cause, assist, or facilitate an act or enterprise of commercial sexual abuse of a minor.
> (b) A person "profits from commercial sexual abuse of a minor" if, acting other than as a minor receiving compensation for personally rendered sexual conduct, he or she accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he or she participates or will participate in the proceeds of commercial sexual abuse of a minor.
> . . . .
> (d) A "sexually explicit act" is a public, private, or live photographed, recorded, or videotaped act or show intended to arouse or satisfy the sexual desires or appeal to the prurient interests of patrons and for which something of value is given or received.

RCW 9.68A.101.

Promoting prostitution is defined with a similar structure:

> A person is guilty of promoting prostitution in the second degree if he or she knowingly:
> (a) profits from prostitution; or
> (b) advances prostitution.

RCW 9A.88.080(1). "Prostitution" is defined as "engag[ing] or agree[ing] or offer[ing] to engage in sexual conduct with another person in return for a fee." RCW 9A.88.030(1). Further definitions nearly identical to those in RCW 9.68A.101 also apply:

> (1) "Advances prostitution." A person "advances prostitution" if, acting other than as a prostitute or as a customer thereof, he or she causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution.
> (2) "Profits from prostitution." A person "profits from prostitution" if, acting other than as a prostitute receiving compensation for personally rendered prostitution services, he or she accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he or she participates or is to participate in the proceeds of prostitution activity.

RCW 9A.88.060. For the purposes of all of these statutes, the definition of "sexual contact" is the same: either sexual intercourse or sexual contact, defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2); RCW 9.68A.101(5); RCW 9A.88.030(3).

The State argues that promoting the commercial sexual abuse of a minor and second degree promoting prostitution are separate offenses, as each includes a unique element. To convict a defendant of promoting commercial sexual abuse of a minor, the State must prove that the victim was in fact a minor. RCW 9A.68A.101(1). To convict a defendant of second degree promoting prostitution, the State must prove that the sexual conduct at issue was performed "with another person." RCW 9A.88.080(1), .030(1). However, the State concedes that promoting the prostitution of a minor satisfies all elements provided for in both statutes. That is, the State argues that the offenses are not the same in law or fact, but concedes that the factual scenario presented by this appeal necessarily satisfies the elements of both.

7

We agree with the State and hold that the offenses are not identical in law or fact, and therefore constitute separate offenses. Although the definitions of the conduct necessary to convict are quite similar, each includes elements not present in the other: promoting commercial sexual abuse of a minor requires that the victim be a minor while promoting prostitution does not, RCW 9.68A.101(1); and promoting prostitution requires sexual intercourse or contact "with another person," while promoting the commercial sexual abuse of a minor requires the promotion of either sexual conduct or a sexually explicit act. RCW 9A.88.030(1), .080(1); RCW 9.68A.101(3)(d). Although proof that a defendant promoted a minor's sexual intercourse or contact with another person for a fee will satisfy the elements of both statutes, proof of either offense is not always sufficient to convict the defendant of the other. That both offenses *may* be established by proof of particular underlying conduct does not mean that proof of either offense is *necessarily* proof of the other. Therefore, we hold that application of the same evidence rule shows that these two offenses are separate.

Because the offenses are separate, we hold that Jones was not placed in double jeopardy by his convictions and separate punishments for promoting the commercial sexual abuse of a minor and promoting prostitution.

B.      Motion to Supplement Briefing on Unit of Prosecution Issue

While our decision in this case was pending, Jones made a motion to stay our decision until our Supreme Court issued its decision in *State v. Barbee*. ___ Wn.2d ___, 386 P.3d 729 (2017). Jones also moved to supplement his briefing to raise a challenge based on the issue presented in *Barbee*. *Barbee* involves whether the correct unit of prosecution for promoting prostitution, RCW 9A.88.080, is based on the number of individuals prostituted or on the number of prostitution enterprises. *Id.* at * 1, 9. Because Jones was convicted of two counts of

promoting prostitution based on OL and TC's involvement in a single prostitution enterprise, our Supreme Court's decision in *Barbee* could have directly affected his case. As such, we granted Jones's motion to stay his appeal pending the Supreme Court's decision in *Barbee*, and we stayed his motion for supplemental briefing until the Supreme Court decided *Barbee*. On January 5, 2017, the Supreme Court issued its opinion in *Barbee*, holding that the State may charge a different count of promoting prostitution for each individual promoted by the perpetrator. *Id.* at *21. With the issuance of the Supreme Court's decision, our stay in this appeal terminated. Because the decision in *Barbee* forecloses Jones's potential double jeopardy argument regarding the proper unit of prosecution for promoting prostitution, we deny Jones's motion for supplemental briefing.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Jones argues that he received ineffective assistance of counsel in violation of his constitutional right to counsel because his attorney failed to bring a motion to sever his trial and opened the door to cross-examination concerning his prior convictions. In his SAG, Jones also argues that he received ineffective assistance of counsel when his attorney failed to raise and argue a mistake of fact defense related to the victim's age. We disagree and hold that Jones received effective assistance.

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). We review such claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. We presume counsel's

performance was not deficient. *Id*. If counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Id*. Deficient performance is prejudicial if there is a reasonable probability that in its absence the result of the proceeding at issue would have differed. *Id*. at 34. In this context, a reasonable probability is a probability sufficient to undermine confidence of outcome. *Id*.

A.      Failure to Bring Motion to Sever

Jones argues that his attorney provided ineffective assistance by failing to move to sever Jones's trial from Miles-Johnson's when he pursued numerous continuances to facilitate negotiation of Miles-Johnson's plea deal. According to this argument, Jones's constitutional right to a speedy trial outweighed any considerations of judicial economy and presented a ground on which an effective attorney would seek severance. We disagree, and hold that Jones's attorney's performance was not deficient and the failure to sever his trial was not prejudicial.

1. Deficient Performance

To establish deficient performance, Jones must show that his attorney's representation fell below an objective standard of reasonableness after considering all the circumstances at trial. *Grier*, 171 Wn.2d at 33.

Here, the trial court was not bound to grant a motion to sever in order to ensure a speedier trial, but "*should* grant a severance of defendants . . . if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant." CrR 4.4(c)(2)(i) (emphasis added). Jones agreed to all of the continuances, so his speedy trial period under Washington's rules of criminal procedure was tolled. CrR3.3(e)(3), (f)(1).

Jones argues that his constitutional right to a speedy trial, which is by nature less clearly delineated than the rule-based right, was in peril as well. In *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009), our Supreme Court held that the rights to a speedy trial secured by the Sixth Amendment to the United States Constitution and by article I, section 22 of the Washington State Constitution are coextensive. In analyzing constitutional speedy trial claims, our court followed the multi-factor analysis of *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), while recognizing that its factors are not exclusive. *Iniguez*, 167 Wn.2d at 283. The first step in the analysis is the determination of whether the delay was presumptively prejudicial. *Iniguez*, 167 Wn.2d at 283. If it was, then the remaining factors are examined. *Id*. Those factors include the length and reason for the delay, whether the defendant has asserted his right, and the ways in which the delay caused prejudice to the defendant. *Id.*

*Iniguez* rejected use of a fixed period of time beyond which delay is presumptively prejudicial, noting *Barker*'s holding that the inquiry necessarily depends on the circumstances of the case. *Id.* at 292. *Iniguez*, however, surveyed other decisions viewing delay ranging from eight months to one year as presumptively prejudicial and concluded that under the circumstances of the case, the delay of over eight months was presumptively prejudicial. *Id.* 291-92. Because the delay in Jones's trial significantly exceeded the eight month to one year range, we assume it qualified as presumptively prejudicial.

Turning, then, to the remaining factors from *Iniquez* and *Barker*, Jones argues only that the delay may have compromised the accuracy of witness testimony. However, he points to no part of the record indicating that any witness had any trouble remembering or attesting to events. Therefore, we hold that Jones has not shown that his right to a speedy trial was threatened and, therefore, that severance was not necessary to protect that right. The trial court was not required

11

to grant a motion to sever on that basis, and it appears unlikely in light of judicial economy considerations that it would have done so at the time.

Where a defendant's right to speedy trial is not threatened, CrR 4.4 advises the court only that it should grant a motion to sever if appropriate to promote a fair determination of his or her guilt or innocence. As noted above, Jones argues that the delay made it less likely that witnesses accurately recalled the events in question. While this may have made an earlier trial preferable, the delay was not so long as to make accurate recall by witnesses especially difficult. Jones also speculates that a witness who evaded a subpoena would likely have been available to testify earlier, and that OL and TC would "have had less incentive to make sure Mr. Jones was found guilty" if they had testified before bringing a separate civil suit against Jones and Miles-Johnson. Br. of Appellant at 27. The basis for this speculation, however, is not made clear.

Because Jones has not shown that his right to a speedy trial was threatened, his counsel's failure to move for a severance did not fall below an objective standard of reasonableness. Therefore, his attorney's decision to not make such a motion was a legitimate strategy given the circumstances at the time.

2. Prejudice

To show that his attorney was ineffective for failing to move for severance, Jones must also show that the motion likely would have been granted and demonstrate a reasonable probability that the outcome of his trial would have been different if his attorney had made such a motion. *Standifer*, 48 Wn. App. at 125-26. As discussed in the preceding section, Jones points primarily to problems with the witnesses' memories as the source of prejudice against him. However, he does not explain what testimony was affected by the delay or point to any portion of a witness's testimony showcasing a delay-induced difficulty. Because Miles-Johnson pled

guilty before trial began, Jones was in fact tried separately. Therefore, he cannot establish that granting a motion to sever would have had any effect other than potentially decreasing the time to trial. We hold that Jones has not shown a reasonable probability that the outcome of his trial would have been different. Accordingly, we reject his argument that he received ineffective assistance of counsel on this basis.

B.      Opening the Door to Testimony Regarding Prior Convictions

Jones argues that his attorney provided ineffective assistance by opening the door to cross-examination about the details of Jones's prior convictions. We disagree and hold that Jones's attorney's performance was not deficient.

The trial court heard the State's pretrial motion to allow evidence from Jones's prior convictions, which it ruled relevant to show that Jones engaged in a common scheme or plan and did not act by accident or mistake. However, it reserved final ruling on the admissibility of that evidence because, depending on the developments at trial, the potential for undue prejudice could substantially outweigh its probative value. After Jones testified that he was around Miles-Johnson, OL and TC, but was uninvolved in the prostitution operation, the trial court ruled that the evidence of Jones's prior convictions would be admissible because that evidence had become especially probative of Jones's guilt. The trial court ruled that the State could not introduce evidence of the details of those convictions on cross-examination of Jones but could introduce such evidence in rebuttal. Following this ruling, Jones's attorney asked Jones to testify regarding the details of his prior convictions for promoting the prostitution of underage girls, opening the door to exploration of those details by the State during cross-examination. Jones's attorney did not request a limiting instruction regarding the jury's use of this evidence.

13

"When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Grier* 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). In general, an attorney can make a legitimate tactical decision to minimize the effect of an adverse admissibility ruling by raising damaging testimony before the State has an opportunity to raise it. *State v. Makela*, 66 Wn. App. 164, 170, 831 P.2d 1109 (1992). Similarly, an attorney's decision not to seek a limiting instruction regarding evidence of prior convictions may be a legitimate tactical choice, as such an instruction draws the jury's attention to the adverse evidence. *State v. Yarbrough*, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009).

Here, the trial court had ruled that the State could introduce evidence of the details surrounding Jones's prior conviction during rebuttal, and the State clearly indicated its intent to do so. Jones's attorney seems to have preemptively elicited testimony regarding those details in a legitimate tactical effort to minimize their impact. His decision to forego a limiting instruction and avoid directing the jury's gaze to the adverse evidence similarly can be characterized as a legitimate tactical maneuver. We hold that these decisions did not constitute deficient performance based on the context that developed at trial. Therefore, we hold that Jones has not demonstrated that he received ineffective assistance of counsel on this basis.

C.      Failure to Raise Mistake of Fact Defense

Jones argues in his SAG that he received ineffective assistance of counsel because his attorney failed to present a defense based on reasonable mistake of fact as to OL's age. We disagree.

Reasonable mistake of fact is a statutory defense to charges of promoting commercial sex abuse of a minor:

14

> It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor by requiring production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper and did not rely solely on the oral allegations or apparent age of the minor.

RCW 9.68A.110(3). Jones's attorney proposed an instruction on this defense and the trial court gave the instruction to the jury. Therefore, his attorney did in fact raise the defense, and it was properly put before the jury. However, his attorney did not argue for the defense in closing.

Jones asserts that his attorney did not sufficiently attempt to elicit testimony that would support the defense. Tactical decisions regarding the questioning of witnesses will seldom violate a defendant's right to effective assistance. *See In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 489, 965 P.2d 593 (1998). Jones testified that OL told him that she was 19 years old. However, he also testified that he made no effort to verify her age, despite having been previously convicted of promoting the prostitution of minors. While Jones argues that his attorney "never asked me if I seen [OL's] ID, or [if she] showed it to me," Jones himself disclaimed making any bona fide attempt to verify her age. SAG at 4. As such, we hold that Jones's attorney did not act deficiently by deciding not to draw the jurors' attention to this point with further questions on the matter.

Jones also challenges his attorney's decision not to address the mistake of fact defense in closing. However, where the evidence before the jury would not adequately support a particular argument, counsel is not ineffective for deciding not to make that argument. *State v. Lottie*, 31 Wn. App. 651, 654, 644 P.2d 707 (1982). Jones states in his SAG that testimony established that OL registered as a guest for the motel room and that motel policy required photo identification for registration. However, testimony also established that motel policy allowed children to register as guests, but "they [would be charged] as an adult" for the room if not accompanied by

their parents. RP at 722. This testimony neither showed that OL had identification showing her to be at least 18 years old nor indicated that Jones ever saw or asked to see that identification. This evidence was insufficient to support a reasonable mistake of fact defense. Therefore, we hold that the failure of Jones's counsel to pursue the defense in closing was not deficient and that Jones did not receive ineffective assistance of counsel on this basis.

### III. WITNESS'S FIFTH AMENDMENT PRIVILEGE

Jones argues in his SAG that the trial court erred by allowing Miles-Johnson to assert a blanket Fifth Amendment privilege and avoid testifying at the CrR 3.5 hearing. We disagree.

In general, a witness who is called to testify is obligated to do so. *State v. Ruiz*, 176 Wn. App. 623, 635, 309 P.3d 700 (2013). However, a witness may avoid this obligation on the basis of his Fifth Amendment privilege against self-incrimination. *Id*. When properly invoked, this privilege extends to any question for which the witness "has 'reasonable cause to apprehend danger from a direct answer.'" *State v. Levy*, 156 Wn.2d 709, 731-32, 132 P.3d 1076 (2006) (quoting *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)). A trial court must evaluate a claim of privilege and is vested with discretion to allow it. *Ruiz*, 176 Wn. App. at 636. We review a trial court's decision for an abuse of that discretion. *Id*.

At the time he invoked his Fifth Amendment privilege, Miles-Johnson had pled guilty to charges in Pierce County. He invoked his privilege as to questions relating to the same events because the possibility of federal criminal prosecution for the same events remained, and testimony relating to those events could relate to potential criminal charges in King County as well. The trial court inquired into these potential charges, asking the Pierce County prosecuting attorney, who negotiated Miles-Johnson's guilty plea, whether federal or King County prosecutors had represented to him that they would not bring charges. The prosecuting attorney

16

stated that based on his discussion with federal prosecutors he "didn't think they would be charging," but that "[n]othing came in writing . . . [and] there was no further communication . . . with the federal government." RP at 265. He stated that he had not been in communication with King County prosecutors at all. Based on this lack of certainty regarding federal or King County charges, the trial court allowed Miles-Johnson's claim of privilege as to the events at issue in Jones's trial, ruling that "[u]nless and until there is some finality to possible charges . . . Mr. Miles-Johnson has a legitimate concern about potentially being charged." RP at 271.

Jones contends that future federal or King County charges were merely speculative. As he notes, "the asserted hazard of self-incrimination must appear to be genuine . . . [and not] fanciful or illusory." *State v. Parker*, 79 Wn.2d 326, 332, 485 P.2d 60 (1971). However, the Pierce County prosecuting attorney who negotiated Miles-Johnson's plea deal made it clear that federal prosecutors were at least considering bringing charges related to the events at issue and had not yet disclosed whether they would do so. Even if it appears unlikely that federal prosecutors would charge Miles-Johnson, the possibility was not fanciful or illusory. These possible charges provided adequate grounds for the trial court to determine that there was a non-speculative risk that Miles-Johnson's testimony would prove incriminating. We hold that the trial court's determination did not constitute an abuse of discretion.

## IV. INSUFFICIENT EVIDENCE

Jones argues in his SAG that insufficient evidence supported his conviction for promoting the commercial sexual abuse of a minor and prostitution of TC. We disagree.

In a criminal trial, the State bears the burden of proving all the elements of a charged offense beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 265 P.3d 746 (2016). We review de novo whether the evidence before the jury was sufficient to support a verdict of

guilt, viewing all evidence in the light most favorable to the State. *Id.* If a rational jury could have found the elements of the charged crimes beyond a reasonable doubt, the evidence was sufficient to support the verdict. *Id.*

To prove that Jones committed the crime of promoting the commercial sexual abuse of a minor, the State was required to prove that Jones "knowingly advance[d] commercial sexual abuse or a sexually explicit act of a minor or profit[ed] from a minor engaged in sexual conduct or a sexually explicit act." RCW 9.68A.101(1). Similarly, to prove that Jones committed the crime of second degree promoting prostitution, the State had to prove that Jones knowingly advanced or profited from prostitution. RCW 9A.88.080(1).

Jones contends that he could not be convicted of this offense because TC testified that Miles-Johnson, not Jones, was the one who discussed prostitution with her and took pictures of her to advertise her particular sexual services.[3] However, as noted above,

> [a] person advances commercial sexual abuse of a minor if . . . [that person] causes or aids a person to commit or engage in commercial sexual abuse of a minor, procures or solicits customers for commercial sexual abuse of a minor, operates or assists in the operation of a house or enterprise for the purposes of engaging in commercial sexual abuse of a minor, or engages in any other conduct designed to institute, aid, cause, assist, or facilitate an act or enterprise of commercial sexual abuse of a minor.

RCW 9.68A.101(3)(a). Similarly,

> [a] person advances prostitution if . . . [that person] causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any

---

[3]To support this argument, Jones cites RP at 505. However, that page transcribes a part of the trial when OL, not TC, was testifying. Moreover, that particular page includes no testimony at all, as it recounts a colloquy among the trial court and counsel during which OL was outside the courtroom. It is unclear which portion of the record before us Jones intended to cite in support of his argument. T.C. testified that Miles-Johnson took pictures of her to advertise sexual services. She did not testify that Jones took any pictures of her or discussed prostitution, but did testify that he was present throughout the process.

18

other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution.

RCW 9A.88.060(1).

Ample evidence indicated that Jones and Miles-Johnson operated a common enterprise to prostitute OL and TC using Internet advertisements. OL testified that the girls were housed together and made use of the same facilities for prostitution. She testified that Jones posted the girls' pictures on the Internet to advertise their sexual services. OL also testified that Jones and Miles-Johnson provided the girls with phones and helped them use those phones to arrange meetups for sexual services, and that Jones taught them how to look for customers on the street.

Evidence that Jones profited from the common enterprise was also sufficient to convict under RCW 9.68A.101. He profited from the commercial exploitation of TC if he "accept[ed] or receive[d] money or other property pursuant to an agreement or understanding with any person whereby he . . . participate[d] in the proceeds of commercial sexual abuse of [TC]" RCW 9.68A.101(3)(b). He profited from TC's prostitution by doing the same. RCW 9A.88.060(2).

Evidence showed that Jones participated in the proceeds of the common enterprise. OL testified that Jones and Miles-Johnson took all of the money the girls earned and then paid for their food and lodging. OL also testified that Jones asked her to engage in anal sex with customers because "he wanted to make more money." RP at 477. From this evidence, the jury reasonably could have inferred an understanding or agreement among all of the parties from which both Jones and Miles-Johnson profited. In addition, the jury was instructed on accomplice liability for both promoting the commercial sexual abuse of a minor and promoting prostitution.

We hold that the evidence was sufficient to support the jury's verdict that Jones promoted the commercial sexual abuse and prostitution of TC as well as OL. Although he appears to have primarily overseen OL's involvement in the operation, the evidence showed that he was engaged

in a common enterprise with Miles-Johnson to advertise, facilitate, and profit from the sexual services of OL and TC.

## CONCLUSION

Based on the foregoing analysis, we affirm Jones's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

WORSWICK, J.

MAXA, J.