[No. 57823-5-I. Division One. August 27, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. BRYAN KEITH BORSHEIM, *Appellant*.

---

[24] 154 Wn.2d 333, 339, 111 P.3d 1183 (2005).

[25] 155 Wn.2d 867, 873, 123 P.3d 456 (2005).

358

360

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Acting Prosecuting Attorney*, and *Brian M. McDonald, Deputy*, for respondent.

¶1 DWYER, J. — Following a jury trial in King County Superior Court, Bryan Borsheim was convicted of four counts of rape of a child in the first degree. Borsheim appeals from the judgment entered on the verdicts, contending that the trial court violated both his right to be free from double jeopardy and his right to a unanimous jury verdict by failing to instruct the jury that a conviction on each of the four charged counts must be predicated upon a different underlying event. Borsheim also contends that the trial court erred by ruling that statements made by him during a custodial interrogation were admissible for impeachment purposes, that he was denied a fair trial by the admission of expert witness testimony that he asserts invaded the province of the jury, and that his attorneys wrongly coerced him not to testify.

¶2 We agree that the trial court's instructions allowed the jury to base each of Borsheim's four convictions on proof of a single underlying event, in violation of Borsheim's right to be free from double jeopardy. That error requires vacation of Borsheim's convictions on the second, third, and fourth counts submitted to the jury. We affirm the trial court's rulings in all other challenged respects and, accordingly, affirm Borsheim's conviction on the first count submitted to the jury.

## FACTS

¶3 Audra Granger and her daughter, B.G., lived with Borsheim between February 2001 and September 2003, during which time Granger and Borsheim were involved in a romantic relationship. In September 2003, then 11-year-old B.G. told her grandparents that Borsheim had been

sexually abusing her. Her grandparents contacted the police, who placed Borsheim under arrest.

¶4  On September 11, 2003, the State charged Borsheim with three counts of rape of a child in the first degree—domestic violence. The State later filed an amended information adding a fourth count. Each of the identical counts alleged that Borsheim raped B.G. "during a period of time intervening between September 1, 2000 through September 8, 2003."

¶5  Prior to trial, the trial court held a CrR 3.5 hearing concerning the admissibility of statements made by Borsheim during a custodial interrogation. The trial court ruled that the statements were voluntarily made and, therefore, were admissible as possible impeachment evidence should Borsheim testify at trial.

¶6  The matter proceeded to jury trial on September 28, 2004. Borsheim did not testify at trial. Consequently, the State never offered into evidence testimony regarding the statements made by Borsheim during the custodial interrogation.

¶7  B.G. testified that Borsheim would take showers with her on a daily basis and that Borsheim forced her to submit to either vaginal or oral sex, usually during those showers, almost every weekday for the two and one half years she and her mother lived with Borsheim, and in eight of the approximately nine homes in which they lived during that time. A medical witness for the State testified that she had reviewed B.G.'s medical files, that her observations were consistent with B.G.'s reports of sexual abuse, and that her medical diagnosis was that B.G. had been sexually abused.

¶8  The jury returned verdicts of guilty on all four counts. The trial court imposed a sentence at the high end of the standard sentencing range, with the sentences for each of the counts to be served concurrently.

¶9  A few days later, Borsheim filed a pro se motion for a new trial, claiming that his counsel had prevented him from testifying at trial. After an evidentiary hearing, the trial court denied the motion.

¶10  This appeal followed.

## DISCUSSION

### Jury Instructions

¶11  Borsheim first contends that the trial court's instructions to the jury deprived him of a fair trial by compromising both his right to be free from double jeopardy and his right to jury unanimity. We agree that the jury instructions were inadequate in that they exposed Borsheim to multiple punishments for the same offense, in violation of his right to be free from double jeopardy.

¶12  The relevant instructions provided to the jury are as follows:

> There are allegations that the Defendant committed acts of rape of child on multiple occasions. *To convict the Defendant, one or more particular acts must be proved beyond a reasonable doubt and you must unanimously agree as to which act or acts have been proved beyond a reasonable doubt.* You need not unanimously agree that all the acts have been proved beyond a reasonable doubt.

Instruction 3 (emphasis added).

> *A separate crime is charged in each count.* You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Instruction 4 (emphasis added).

> To convict the defendant of the crime of Rape of a Child in the First Degree, *as charged in counts 1, 2, 3, and 4,* each of the following elements of the crime must be proved beyond a reasonable doubt *as to each count*:
>
> (1) That during a period of time intervening between February 1, 2001, and September 5, 2003, the defendant had sexual intercourse with [B.G.];
>
> (2) That [B.G.] was less than twelve years old at the time of the sexual intercourse and was not married to the defendant;

(3) That the defendant was at least twenty-four months older than [B.G.]; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty on that count.

On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty on that count.

Instruction 9 (emphasis added).

¶13 As Borsheim argues, none of the preceding instructions specifically state that a conviction on each charged count must be based on a separate and distinct underlying incident and that proof of any one incident cannot support a finding of guilt on more than one count. Borsheim contends, therefore, that the instructions allowed the jurors to base a conviction on all four counts on a finding that a single underlying event occurred.

¶14 As an initial matter, we note that this contention implicates Borsheim's right to be free from double jeopardy, not his right to a unanimous jury verdict.

■ ■ ¶15 A defendant's right to a unanimous jury verdict is the guaranty that a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984). Pursuant to this right, a jury must be unanimous as to *which* act or incident constitutes a particular charged count of criminal conduct. *State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991); *Petrich*, 101 Wn.2d at 572. Thus, in cases where several acts could form the basis of one charged count, in order to convict the defendant on that count, either the State must elect the specific act on which it relies for conviction or the court must instruct the jury that it must unanimously agree that a specific criminal act has been proved beyond a reasonable doubt. *Noltie*, 116 Wn.2d at 843; *Petrich*, 101 Wn.2d at 572.

¶16 Here, instruction 3 provides the protection required by these principles. That instruction states that, to convict the defendant, the jurors must unanimously agree that a specific criminal act had been proved beyond a reasonable doubt.[1] Thus, the instruction ensured that a conviction on any given count would be predicated on the jury's unanimous agreement regarding the commission of a specific criminal act. Borsheim's right to jury unanimity was not violated.

■■ ¶17 The right to be free from double jeopardy, on the other hand, is the constitutional guaranty protecting a defendant against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *Noltie*, 116 Wn.2d at 848. Here, Borsheim asserts that the jury instructions allowed the jury to base a conviction on more than one identical count on a single underlying event, thereby exposing him to multiple punishments for a single offense. This contention implicates his right to be free from double jeopardy, as opposed to the right to juror unanimity.[2]

■ ■ ¶18 We agree that the jury instructions given violated Borsheim's right to be free from double jeopardy by exposing him to multiple punishments for the same offense. As an initial proposition, jury instructions "must more than adequately convey the law. They must make the relevant legal standard 'manifestly apparent to the average juror.' "

---

[1] Instruction 3 mirrors *Washington Pattern Jury Instruction* 4.25, which was designed to ensure the constitutionally protected right to juror unanimity. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL 4.25 (2d ed. 1994); *State v. Watkins*, 136 Wn. App. 240, 243-44, 148 P.3d 1112 (2006).

[2] In discussing the merits of a contention similar to the one raised here, the court in *State v. Ellis*, 71 Wn. App. 400, 404, 859 P.2d 632 (1993), explained the difference between a contention based on the right to unanimity and one based on the right to be free from double jeopardy as follows:

[A contention] asserting that all jurors must agree on the same act underlying *any given count* has to do with jury unanimity and the right to jury trial. [A contention] asserting that the jury could not use the *same act as a factual basis for more than one count* has to do with the right against double jeopardy; at least in the context here, to use one act as the basis for two counts is to convict twice for the same crime.

(Emphasis added.)

*State v. Watkins*, 136 Wn. App. 240, 241, 148 P.3d 1112 (2006) (internal quotation marks omitted) (quoting *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996)). Accordingly, if it is not manifestly apparent to a criminal trial jury that the State is not seeking to impose multiple punishments for the same offense, the defendant's right to be free from double jeopardy may be violated. *See Noltie*, 116 Wn.2d at 848-49.

¶19 In keeping with these principles, we made clear more than a decade ago that in sexual abuse cases where multiple identical counts are alleged to have occurred within the same charging period, the trial court must instruct the jury "that they are to find 'separate and distinct acts' for each count." *State v. Hayes*, 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (quoting *Noltie*, 116 Wn.2d at 846). Here, multiple counts of sexual abuse were alleged to have occurred within the same charging period. Thus, pursuant to the rule articulated in *Hayes*, an instruction that the jury must find "separate and distinct" acts for convictions on each count was required. However, no such instruction was proposed by the State and none was given by the trial court.

¶20 The instructions actually given to the jury did not cure this defect. As herein discussed, instruction 3 adequately informed the jurors as to the need for jury unanimity regarding which act formed the basis for any given count. It did not, however, convey the need to base each charged count on a "separate and distinct" underlying event. Similarly, although instruction 4 states that "a separate crime is charged in each count," neither this instruction nor any other informed the jury that each "crime" required proof of a different act. Finally, instruction 9, the "to convict" instruction, states that each of the elements of the crime must be proved "as to each count." However, this instruction does not state that the first such element, "sexual intercourse with [B.G.]," requires a finding of a "separate and distinct" act of sexual intercourse for each count on which a conviction is rendered.

¶21 The error in omitting an instruction addressing this double jeopardy concern is further compounded by the fact that instruction 9, somewhat confusingly, encompasses all four identical counts in a single instruction rather than setting the counts out in separate instructions, as would be preferable. *See, e.g., Noltie*, 116 Wn.2d at 849 (two separate "to convict" instructions given for two counts of rape); *State v. Ellis*, 71 Wn. App. 400, 401-02, 859 P.2d 632 (1993) (four separate "to convict" instructions given for two counts of child molestation and two counts of child rape).

¶22 Thus, read together, the instructions given by the trial court neither contained the "separate and distinct act" instruction expressly required by the rule articulated in *Hayes* nor made the need for a finding of "separate and distinct acts" manifestly apparent to the average juror.

¶23 The State's reliance on *Ellis*, 71 Wn. App. 400, a decision filed several years before *Hayes*, does not militate otherwise. In the *Ellis* case, the court considered a similar argument to that raised here, i.e., that the instructions given by the trial court allowed the jury to use the same underlying act to convict the defendant on more than one count. *Ellis*, 71 Wn. App. at 406. The court rejected the defendant's argument under the particular facts of that case, stating, "It is our view that the ordinary juror would understand that when two counts charge the very same type of crime, each count requires proof of a different act." *Ellis*, 71 Wn. App. at 406. However, that conclusion was based on consideration of instructions that differed in significant respects from those given in this case.

¶24 Most significantly, the trial court in the *Ellis* case gave four separate "to convict" instructions, one for each charged count. The first and the second count charged identical crimes, but the instruction for the second count explicitly stated that the act underlying that count had to have occurred "on a day other than Count I." *Ellis*, 71 Wn. App. at 401-02. The third and the fourth count similarly

charged identical crimes, but each alleged that the charged act had occurred during a different period of time.[3]

¶25  Based both on the four separate "to convict" instructions and the distinguishing language therein contained, it is apparent that the trial court in the *Ellis* case was attempting to draw the jury's attention to the principle that each count charged the commission of a separate event. Here, in contrast, the trial court merely proffered a single "to convict" instruction, encompassing all four identical counts but listing the elements of the charged crime only once.

¶26  Additionally, the unanimity instruction provided by the trial court in the *Ellis* case further alluded to the requirement that each charged count must be based on a different act:

> "Evidence has been introduced of multiple acts of sexual contact and intercourse between the defendant and [C.R.].
>
> "Although twelve of you need not agree that all the acts have been proved, you must unanimously agree that at least one particular act has been proved beyond a reasonable doubt *for each count*."

*Ellis*, 71 Wn. App. at 402 (emphasis added) (alteration in original). The unanimity instruction given in this case, in contrast, did not contain the "for each count" language. Thus, although it adequately instructed the jury with regard to the concern for jury unanimity, it did not adequately instruct the jury with regard to the concern of double jeopardy.

¶27  In its *Ellis* opinion, the court also relied on the fact that the trial court had provided an instruction, similar to instruction 4 in this case, which stated, "A separate crime is

---

[3] We recognize that there was a brief overlap in the time periods alleged pursuant to the third and the fourth counts charged in the *Ellis* case. However, the appellate court's holding was also based on its consideration of several other factors, including the language of other instructions offered, which reasonably informed the jurors that each of the charged counts required proof of a different act. The court's holding was based on the information given to the jurors by the instructions viewed as a whole, rather than by an element of a single instruction viewed in isolation. *Ellis*, 71 Wn. App. at 401-06.

charged in each count. You must decide each count separately." *Ellis*, 71 Wn. App. at 402. However, contrary to the State's contention, the *Ellis* decision did not hold that this instruction, standing alone, was sufficient to convey to the jury the need for it to base its decision on each charged count on a different underlying event. Rather, the *Ellis* decision held that the instructions were adequate when viewed as a whole, considering both the separate and separately worded "to convict" instructions as well as the "for each count" language of the unanimity instruction. *Ellis*, 71 Wn. App. at 402-06.

¶28 Furthermore, the *Ellis* decision noted that the instructions there at issue were only "marginally" adequate. *Ellis*, 71 Wn. App. at 406. Focusing specifically on the unanimity instruction, the court stated that the instruction was only barely adequate because it attempted to convey both "the idea that all 12 jurors must agree on the act used as a factual basis for any given count" (unanimity) and "the idea that the same act cannot be used to convict twice" (double jeopardy). *Ellis*, 71 Wn. App. at 407. The court further noted that the two concepts should, preferably, be described "in separate instructions, or at least in separate sentences." *Ellis*, 71 Wn. App. at 407.

¶29 Here, language conveying the need to base each conviction on a different act was neither contained in the unanimity instruction, as held to be only marginally adequate by the court in *Ellis*, nor was it set out in any other instruction, as required by the rule articulated by us in *Hayes*. Therefore, the jury instructions failed to make manifestly apparent to the jury that each of the four counts must be based on a different underlying act. In other words, the instructions allowed the jury to unanimously find that one act of sexual intercourse had been proved beyond a reasonable doubt and to base all four convictions on that single act. This error exposed Borsheim to multiple punishments for a single offense and, thus, violated his right to be free from double jeopardy.

¶30 However, as the unanimity instruction ensured that the jury unanimously agreed as to the commission of at least one act of child rape, our holding requires only that we reverse and order vacated Borsheim's convictions on counts two, three, and four. In order to determine whether any of the other errors alleged by Borsheim requires reversal of his conviction on the first count, we must examine the remaining issues raised.

*Ruling on Admissibility of Borsheim's Statements*

¶31 Borsheim next contends that the trial court erred by ruling, after conducting the pretrial CrR 3.5 hearing,[4] that statements made by him during a jailhouse interrogation were potentially admissible to impeach his testimony should he testify at trial. We disagree.[5]

¶32 A defendant's statements are admissible as impeachment evidence, even when such statements are obtained in violation of *Miranda* safeguards,[6] so long as the statements are voluntarily made. *Michigan v. Harvey*, 494 U.S.

---

[4] "When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible." CrR 3.5(a).

[5] As a preliminary matter, the State asserts that we should refuse to review this issue because Borsheim did not actually testify at trial and, thus, the disputed statements were not actually offered into evidence. However, we have previously held that a criminal defendant need not testify in order to preserve for appellate review a trial court's ruling that evidence suppressed to protect a defendant's Fourth Amendment rights is admissible for impeachment purposes. *State v. Greve*, 67 Wn. App. 166, 169, 834 P.2d 656 (1992). In so holding, we noted that because use of such evidence raises constitutional concerns, a contrary rule may " 'unacceptably infringe upon the defendant's rights.' " *Greve*, 67 Wn. App. at 169 (quoting *State v. Brown*, 113 Wn.2d 520, 538, 782 P.2d 1013, 787 P.2d 906 (1989)).

As was the case in *Greve*, Borsheim also asserts that the potential use of the contested evidence implicated a constitutional right. *See* U.S. CONST. amend. V; *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State v. Stewart*, 113 Wn.2d 462, 465-66, 780 P.2d 844 (1989). Accordingly, we hold that the rationale of the *Greve* decision applies here with equal force and reach the merits of Borsheim's claim of error.

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Pursuant to *Miranda*, 384 U.S. at 444, in its *case-in-chief* the prosecution may not use statements "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege

344, 350-51, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990); *Harris v. New York*, 401 U.S. 222, 223-26, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). As the Supreme Court stated in *Harris*, 401 U.S. at 225-26:

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. . . .
>
> The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

■ ¶33 A trial court determines whether a statement is voluntary by inquiring whether, under the totality of the circumstances, the statement was coerced. *State v. Broadaway*, 133 Wn.2d 118, 132, 942 P.2d 363 (1997). Relevant circumstances include the condition of the defendant, the defendant's mental abilities, and the conduct of the police. *State v. Rupe*, 101 Wn.2d 664, 678-79, 683 P.2d 571 (1984). The court also considers any promises or misrepresentations the interrogating officers made to determine whether the defendant's will was overborne. *State v. Trout*, 125 Wn. App. 403, 414, 105 P.3d 69, *review denied*, 155 Wn.2d 1005 (2005). However, implied promises or misrepresentations do not necessarily render a statement involuntarily made. *Trout*, 125 Wn. App. at 414.

■ ■ ¶34 The police detective to whom Borsheim made the contested statements testified at the CrR 3.5 hearing. He stated that after Borsheim was arrested and while he was being detained in jail, the detective advised Borsheim of his *Miranda* rights, after which Borsheim stated that he wished to speak with an attorney. The detective immediately ended the interview. As the detective was preparing to leave the jail, a jail sergeant informed him that Borsheim had changed his mind and wished to speak with the detective. The detective again contacted Borsheim, advised him of his *Miranda* rights, and asked if Borsheim

---

against self-incrimination." Such safeguards include a warning by police of the right to remain silent and the right to an attorney, and an immediate termination of police questioning if an attorney is requested. *Miranda*, 384 U.S. at 444.

wished to waive those rights. Borsheim answered in the affirmative. Borsheim then made a statement to the detective in which he denied sexually abusing B.G.

¶35 Borsheim testified at the CrR 3.5 hearing that, after he invoked his right to an attorney and was being led back to his cell by a jail sergeant, he asked the sergeant how he could get an attorney, to which the sergeant responded, "you talk to the detective and then you will get an attorney." Borsheim further testified that he understood this statement to mean that he must speak to the detective before an attorney would be provided to him. On cross-examination, however, Borsheim acknowledged that he understood that he had a right to have an attorney present when he was questioned by the detective, and that he had a right to remain silent.

¶36 The trial court found that Borsheim's statements were voluntarily made and, therefore, admissible as possible impeachment evidence should Borsheim testify. That finding is supported by substantial evidence.[7] The detective testified that he read Borsheim his *Miranda* rights, ceased questioning Borsheim when he asked for an attorney, and resumed questioning only at Borsheim's request. Borsheim also acknowledged that he knew of his right to remain silent and of his right to have an attorney present during the detective's questioning. Such evidence is sufficient to support the finding that Borsheim's statements were not coerced.[8] That finding, in turn, supports the trial court's

---

[7] Findings of fact entered by a trial court pursuant to a CrR 3.5 hearing are binding on us if they are supported by substantial evidence. *Broadaway,* 133 Wn.2d at 129-34. Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Mendez,* 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California,* ___ U.S. ___, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

[8] Borsheim contends that the trial court's finding that Borsheim's statements were voluntarily made was inconsistent with the trial court's adoption "as true" of Borsheim's testimony regarding his interaction with the jail sergeant. However, the finding on which Borsheim relies states that he testified as to his conversation with the jail sergeant. It neither states nor suggests that the trial court accepted Borsheim's testimony as true. Finding of Fact 6.

conclusion that the statements were potentially admissible as impeachment evidence should Borsheim testify at trial.

¶37 There was no error.

*Expert Witness Testimony*

¶38 Borsheim next asserts that the testimony of the State's expert medical witness invaded the province of the jury and, thereby, violated Borsheim's right to a fair trial. Borsheim, however, did not preserve this claim of error for appellate review.

■ ¶39 Generally, a witness may not offer opinion testimony regarding the guilt of a defendant. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Such testimony is impermissible because it " 'invad[es] the exclusive province of the finder of fact.' " *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993) (alteration in original) (quoting *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). An improper statement as to an opinion of guilt may be implied from a testimonial opinion that a child claiming sexual abuse is telling the truth. *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992).

■ ¶40 However, Borsheim failed to object to the contested testimony at trial. A claim of error may be raised for the first time on appeal only where it invokes a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). In the context of a child sexual abuse case, our Supreme Court recently

---

Borsheim also contends that because the State did not produce the jail sergeant's testimony at the CrR 3.5 hearing, it must be presumed that Borsheim's testimony as to the conversation between him and the Sergeant was accurate. The case relied on by Borsheim for this proposition iterates the rule that " 'where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so,—the jury may draw an inference that it would be unfavorable to him.' " *State v. Davis*, 73 Wn.2d 271, 276, 438 P.2d 185 (1968) (internal quotation marks omitted) (quoting *Wright v. Safeway Stores, Inc.*, 7 Wn.2d 341, 346, 109 P.2d 542 (1941)). However, the proceeding here was a hearing to the bench, not a trial to a jury. Borsheim has not demonstrated how or why this rule, allowing but not mandating a particular inference by a jury, must mandate a particular inference by the trial court.

held that "opinion testimony relating only indirectly to a victim's credibility, if not objected to at trial, does not give rise to a 'manifest' constitutional error" justifying review of the claim of error raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 922, 155 P.3d 125 (2007). The court elaborated:

> "Manifest error" requires a *nearly explicit statement by the witness that the witness believed the accusing victim*. Requiring an explicit or almost explicit witness statement on an ultimate issue of fact is consistent with our precedent holding the manifest error exception is narrow.

*Kirkman*, 159 Wn.2d at 936 (emphasis added).

¶41 Here, the witness did not explicitly state that she believed B.G. Rather, she testified only that her findings were consistent with B.G.'s account and that her medical diagnosis, based in a large part on the presence of genital warts on B.G., was that B.G. had been sexually abused. That testimony conveyed only the witness's opinion that sexual abuse had occurred, not that the witness believed B.G.'s assertion that Borsheim was the party guilty of that abuse. *See State v. Sanders*, 66 Wn. App. 380, 387, 832 P.2d 1326 (1992) ("In general, testimony deemed to be an opinion as to a defendant's guilt must relate directly to the defendant.").

¶42 The error alleged may not properly be characterized as a manifest constitutional error and, therefore, is not reviewable on appeal. *Kirkman*, 159 Wn.2d at 936.

### Borsheim's Right To Testify

¶43 Finally, Borsheim contends that his trial attorneys provided him with ineffective assistance of counsel by preventing him from testifying at trial. A criminal defendant has a right to testify on his or her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *State v. Robinson*, 138 Wn.2d 753, 758, 982 P.2d 590 (1999). A claim that an attorney improperly

prevented a defendant from testifying is evaluated as a claim of ineffective assistance of counsel. *Robinson*, 138 Wn.2d at 765-66. In order to succeed in such a claim, the defendant must show both that the attorney's performance was deficient and that the defendant was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688-93, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Robinson*, 138 Wn.2d at 766. Courts engage in a presumption that counsel's representation was effective. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003).

¶44 An attorney's performance is deficient in this regard only if the attorney "actually prevented" the defendant from testifying. *Robinson*, 138 Wn.2d at 764. In order to prove that a defendant's attorney actually prevented the defendant from testifying, "the defendant must prove that the attorney refused to allow him to testify in the face of the defendant's unequivocal demands that he be allowed to do so." *Robinson*, 138 Wn.2d at 764. An attorney's refusal to allow a defendant to testify may be established where the attorney refuses to call the defendant as a witness despite the defendant's requests, where the attorney uses threats or coercion, or where the attorney flagrantly disregards the defendant's request to testify. *Robinson*, 138 Wn.2d at 763. However, "while the decision to testify should ultimately be made by the client, it is entirely appropriate for the attorney to advise and inform the client in making the decision to take the stand." *Robinson*, 138 Wn.2d at 763.

¶45 During the hearing on Borsheim's motion for a new trial, Borsheim and his two trial attorneys all testified. His attorneys testified that although Borsheim initially wanted to testify at trial, after they both strongly advised him against doing so, he vacillated throughout the course of the trial regarding whether he wanted to take the stand. Both attorneys testified that they strongly advised Borsheim against testifying but that Borsheim knew that it was

ultimately his choice whether or not to do so.[9] One of the attorneys further testified that he had prepared questions to ask Borsheim should Borsheim choose to testify.

¶46 Borsheim testified at the hearing that he had consistently insisted that he wanted to testify at trial but that his attorneys pressured him not to do so. On the last day of trial, Borsheim again insisted that he wanted to take the stand, to which one of his attorneys responded, "I guess I can think of some things to ask you." Borsheim further testified that as a result of that statement, he felt forced not to take the stand because he did not believe his counsel to be prepared to question him. On cross-examination during the hearing, however, Borsheim testified that he understood that he had a right to testify at trial.

¶47 The trial court denied Borsheim's motion, finding that Borsheim knew that he had a right to testify and that his choice not to do so was made voluntarily.

¶48 This finding is supported by substantial evidence.[10] Both Borsheim and his attorneys testified that Borsheim knew that the ultimate decision whether or not to testify was his to make. Furthermore, his attorneys testified that Borsheim equivocated or vacillated regarding his desire to testify throughout the course of the trial. This testimony is supported by the trial court record, wherein Borsheim's attorneys informed the trial court at different times that Borsheim would or would not testify, and wherein the trial court twice granted recesses for Borsheim's attorneys to determine whether Borsheim wished to testify. The trial court's finding of voluntariness, in turn, supports the trial court's order denying Borsheim's motion for a new trial.

¶49 Borsheim's conviction on the first count of rape of a child in the first degree is affirmed. Borsheim's convictions

---

[9] One of the attorneys acknowledged that the other attorney told Borsheim something to the effect of "you can't testify" but explained that the statement was made in the context of the attorneys expressing their opinion about what Borsheim should do, rather than what he had a right to do.

[10] A trial court's findings in relation to an ineffective assistance of counsel claim are reviewed to determine if they are supported by substantial evidence in the record. *State v. Holm*, 91 Wn. App. 429, 435, 957 P.2d 1278 (1998).

on counts two, three, and four are reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

GROSSE and COX, JJ., concur.