# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74815-7-I |
| Respondent, | ) | |
| v. | ) | |
| ARTHUR E. BENSON, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: July 17, 2017 |

VERELLEN, C.J. — Arthur Benson was charged with one count of first degree rape of a child based on an act of intercourse consisting of oral-genital contact and three counts of first degree child molestation based on numerous other incidents not involving oral-genital contact. The jury was not instructed that it must find Benson committed the rape of a child count as separate and distinct from the child molestation counts. But because it was manifestly apparent to the jury that the State was not seeking multiple punishments against Benson for the same act, there was no double jeopardy violation.

The trial court imposed a community custody condition that Benson cannot frequent areas where minors are known to congregate as defined by the community corrections officer. We agree with the parties that the condition is not sufficiently definite to apprise Benson of prohibited conduct and allows for arbitrary enforcement by his community corrections officer.

Therefore, we affirm and remand with instructions to strike the unconstitutionally vague community custody condition.

## FACTS

In 2001, when A.L.F. was seven years old, she moved with her mother and sister to Lynnwood, Washington.[1] While A.L.F.'s mother worked at a nearby restaurant, Arthur Benson, her mother's live-in boyfriend, supervised A.L.F. and her sister.

Benson began a game of "Truth or Dare" with A.L.F. and her sister. He showed them his penis. By the time A.L.F. was eight years old, Benson had asked her to touch his penis with her hand, which she did several times.

At one point, Benson put his penis in A.L.F.'s mouth. Benson engaged in other sexual activity with A.L.F. in her mother's bedroom. Benson had A.L.F. go to her mother's room, where she got on all fours on a towel, and he placed his penis against her genitals. This happened approximately seven different times. One time, Benson and A.L.F. lay in bed face-to-face and Benson put his penis on her genitals. A.L.F. testified none of these incidents involved penetration.[2]

The State charged Benson with one count of first degree rape of a child and three counts of first degree child molestation involving A.L.F.

In colloquy regarding jury instructions, the court, prosecutor, and defense counsel discussed instructions regarding the number of counts alleged:

> COURT: Right. And it only deals with the child molestation counts, because I would say as I heard the testimony, and please correct me if I'm wrong, as I heard the testimony I only heard one act of child rape.
>
> STATE: Right. Rape of a child, yes.

---

[1] Because the victim was a minor, she will be referred to by her initials.

[2] A.L.F. testified that on one occasion, Benson put his penis "more inside," but then clarified that there was no penetration. Report of Proceedings (RP) (Dec. 14, 2015) at 96.

COURT: Rape of a child.

DEFENSE: I'm assuming we all know what act we're talking about. We're all talking about the allegation of oral sex; correct?

STATE: Uh-huh.

DEFENSE: We're not talking about the all fours on the bed.

STATE: There is no penetration testified to.

COURT: Correct. All right. So then there would be no exceptions to the giving or not giving of any of the court's instructions.[3]

The court based its to-convict instructions for first degree child molestation on pattern jury instruction WPIC 44.11.[4] Each instruction required the jury to find an "act separate and distinct from" the other two counts of child molestation.[5] The court's to-convict instruction for the single count of first degree rape of a child was based on WPIC 44.11.[6] The instruction did not require an "act separate and distinct from" the counts of molestation.[7] The instructions included a definition of "sexual contact"[8] and "sexual intercourse."[9] The definition for "sexual intercourse" did not include penetration.[10]

---

[3] RP (Dec. 16, 2015) at 11-12.

[4] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 44.21, at 866 (4th ed. 2016) (WPIC).

[5] CP at 75-77.

[6] CP at 74.

[7] Id.

[8] CP at 78 ("Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party.").

[9] CP at 79.

[10] Id. ("Sexual intercourse means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.").

In closing, the State elected which act it relied on for the single count of first degree rape of a child:

> Now we get to Count No. 9 and *it's the only charge of rape of a child in the first degree and it involves [A.L.F.]. And what we're talking about is her holding his penis in her mouth.* . . . Sexual intercourse is what's required for rape of a child in the first degree, and sexual intercourse is defined in jury instruction No. 14. "Sexual intercourse means any act of sexual contact between persons involving the *sex organs of one person and the mouth or anus of another* whether such persons are of the same or opposite sex." *So sex organs of one person, penis, mouth of another, mouth or anus of another. So that's mouth on penis. That is rape of a child in the first degree.*[11]

The State also elected which acts it relied on for the three counts of first degree child molestation:

> Now, in regard to the other counts regarding, referring to [A.L.F.], there are three more. Okay. *So there are three more counts of child molestation in the first degree relating to [A.L.F.].*
>
> So what do we have with [A.L.F.]? We have her telling us that *she touched his penis with her hand* more than one time. She actually said more than one, maybe less than ten. So we have at least two.
>
> *Then we have the whole getting on all fours.* She said—well, let me back up. So she said he was naked. She was naked. *His penis was touching her vagina. That's unquestionably sexual contact.* She said that happened maybe seven times. I mean, that's well more than three.
>
> And then we have the one time that was different . . . .
>
> . . . She said that time he wanted to try something that was different. *So they were both naked and his penis—they were facing each other that time and his penis was on her vaginal area. That's clearly sexual contact.* It didn't work. So they didn't do it again.
>
> Now, it's not rape because there was no penetration. She clearly said, no, his penis didn't actually go in. . . . But, anyway, that's sexual contact, but it's short of penetration, so that would be child molestation.[12]

---

[11] RP (Dec. 16, 2015) at 227-28 (emphasis added).

[12] Id. at 229-31 (emphasis added).

The jury convicted Benson on all counts.

Benson appeals.

## ANALYSIS

### Double Jeopardy

Benson argues the jury instructions violated his right to be free from double jeopardy because they exposed him to multiple punishments for the same offense.

"The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense."[13] This court reviews a double jeopardy claim de novo, and it may be raised for the first time on appeal.[14] We "may consider insufficient instructions 'in light of the full record' to determine if the instructions 'actually effected a double jeopardy error.'"[15]

In State v. Land, this court recognized when an act of sexual intercourse involves oral-genital contact only, if done for sexual gratification, that conduct is both molestation and rape.[16] Because they are the same in fact and in law, they are not separately punishable.[17] When both are charged, the jury instructions must require that the rape of a child and child molestation counts be based on separate and distinct acts.[18] The absence of such language presents the potential for double jeopardy.[19] But there is no

---

[13] State v. Land, 172 Wn. App. 593, 598, 295 P.3d 782 (2013) (citing U.S. CONST. AMEND. V; WASH. CONST. art. I, § 9).

[14] Id.

[15] State v. Peña Fuentes, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting State v. Mutch, 171 Wn.2d 646, 664, 254 P.3d 803 (2011)).

[16] 172 Wn. App. 593, 600, 295 P.3d 782 (2013).

[17] Id.

[18] Id. at 600-01.

[19] Id.

violation of the defendant's guarantee against double jeopardy if, considering the evidence, arguments, and jury instructions in their entirety, it is "'*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense.'"[20]

As clarified at oral argument, the State concedes the jury should have been given the "separate and distinct acts" instruction, but contends it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense. We agree there was no double jeopardy violation.

In State v. Peña Fuentes, the defendant was convicted of one count of first degree rape of a child and two counts of first degree child molestation.[21] The jury instructions for one count of rape of a child did not require that the conduct must have occurred on an occasion separate and distinct from the child molestation charges.[22] Our Supreme Court held it was "manifestly apparent that the convictions were based on separate acts because the prosecution made a point to clearly distinguish between the acts that would constitute rape of a child and those that would constitute child molestation."[23]

The Peña Fuentes court focused on the clear election by the State in closing argument:

> In the prosecutor's closing argument, he *addressed count I (child rape)* and *identified the two specific acts that occurred* at the condo that supported a child rape conviction. The prosecutor *then addressed counts*

---

[20] Mutch, 171 Wn.2d at 664 (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2009)).

[21] 179 Wn.2d 808, 823, 318 P.3d 257 (2014).

[22] Id.

[23] Id. at 825.

*III and IV, which involved child molestation that occurred during the same time period as count I. The prosecutor clearly used "rape" and "child molestation" to describe separate and distinct acts.* He divided Peña Fuentes's behaviors into two categories—the acts involving penetration, which constituted rape, and the other inappropriate acts, which constituted molestation. And again, the defendant did not challenge the number of acts or whether the acts overlapped; he challenged only J.B.'s believability. The jury ultimately believed J.B.'s testimony regarding the various acts that occurred at the condo.[24]

In addition to a clear election in closing argument, the "manifestly apparent" cases recognize other factors such as clear and distinct references to rape of a child and molestation, separate to-convict instructions, clarity of the evidence presented at trial, and whether the defense challenged the credibility of the victim rather than the number of acts or whether the acts overlapped.[25]

Consistent with Peña Fuentes, the State here clearly identified the single incident of oral-genital contact during the Truth or Dare game as the incident supporting the single count of rape of a child. The State then identified categories of the conduct that the State relied on for the child molestation counts: multiple incidents of A.L.F. touching Benson with her hand, a single face-to-face incident of genital-to-genital contact without penetration, and numerous incidents of genital-to-genital contact with A.L.F. on all fours without penetration.

The State drew a clear distinction between the alleged counts of rape of a child and child molestation, similar to the prosecutor's closing remarks in Peña Fuentes.[26]

---

[24] Id. at 825-26 (emphasis added) (citations omitted).

[25] See id. at 825; Land, 172 Wn. App. at 602-03; State v Borsheim, 140 Wn. App. 357, 368, 165 P.3d 417 (2007); State v. Wallmuller, 164 Wn. App. 890, 898-99, 265 P.3d 940 (2011); State v. Daniels, 183 Wn. App. 109, 118-21, 332 P.3d 1142 (2014).

[26] Peña Fuentes, 179 Wn.2d at 825 ("The prosecutor clearly used 'rape' and 'child molestation' to describe separate and distinct acts.").

Additionally, the jury received separate to-convict instructions, the evidence presented at trial did not confuse or blur the single incident of sexual intercourse by oral-genital contact with other acts of sexual contact, and Benson focused on credibility of the victim rather than challenge the number of acts or whether the acts overlapped.

Benson's attempts to distinguish Peña Fuentes are not persuasive. Benson contends the Peña Fuentes court relied on the prosecutor's division of the acts into two categories: "'acts involving penetration, which constituted rape, and the other inappropriate acts, which constituted molestation.'"[27] But Peña Fuentes is not so narrow. The court emphasized the clarity of the prosecutor's election at closing, not the specific categories described by the prosecutor.[28]

Relying on State v. Kier,[29] Benson argues that an election in closing cannot cure a double jeopardy violation. But the Kier court merely noted that it could not "consider the closing statement *in isolation*."[30] Here, we do not rely on the State's closing argument in isolation. As discussed, other factors recognized in the "manifestly apparent" cases are also present.

Alternatively, Benson contends the State's use of a unanimity instruction does not cure a double jeopardy violation. Benson relies on State v. Borsheim.[31] In that case, this court held a unanimity instruction did not cure a double jeopardy violation

---

[27] Appellant's Reply Br. at 6 (quoting Peña Fuentes, 179 Wn.2d at 825).

[28] Peña Fuentes, 179 Wn.2d at 826 ("*Because of the clarity of the prosecutor's closing argument*, we believe . . . .") (emphasis added).

[29] 164 Wn.2d 798, 194 P.3d 212 (2008).

[30] Id. at 813 (emphasis added).

[31] 140 Wn. App. 357, 165 P.3d 417 (2007).

where the jury was given one single to-convict instruction for four separate identical counts.[32] Here, we do not rely on a unanimity instruction to resolve a separate and distinct act requirement for *identical counts*, as was rejected in Borsheim.

The jury received separate to-convict instructions for each count and the jury reached individual verdicts for each count.[33] As discussed, the State clearly elected the acts on which it relied for each count. None of the acts the State elected for child molestation included oral-genital contact.

In conclusion, the State's closing argument was clear. There was no suggestion, direct or indirect, that the act of oral-genital contact was the basis for any of the three counts of first degree child molestation. The State clearly referred to rape of a child and child molestation as distinct counts. And the defense challenged A.L.F.'s credibility rather than the number of acts or whether the acts overlapped.[34] It was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same act. Benson was not denied his right to be free from double jeopardy.

---

[32] Id. at 370.

[33] Benson does not assert a need for separate and distinct acts to support multiple identical counts as addressed in Borsheim. See Borsheim, 140 Wn. App. at 367; see Appellant's Br. at 1. As to the three counts of first degree child molestation, he was charged with separate and distinct acts.

[34] See Peña Fuentes, 179 Wn.2d at 825.

*Community Custody Condition*

The State concedes the condition of community custody deferring to the community corrections officer to define areas where children tend to congregate is invalid. We agree.[35]

*Appellate Costs*

Appellate costs are generally awarded to the substantially prevailing party.[36] However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[37]

Here, Benson was found indigent on appeal by the trial court. If the State has evidence indicating that Benson's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner. Otherwise, the State is not entitled to appellate costs.

*Statement of Additional Grounds for Review*

In his statement of additional grounds for review, Benson denies that anything ever happened. He refers to his medical records, but those are not part of the record on appeal. He suggests others can confirm he was not in the household for a period of time, but the record on appeal does not include any such information. Arguments

---

[35] See State v. Irwin, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015); State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008); State v. Sanchez Valencia, 169 Wn.2d 782, 792-93, 239 P.3d 1059 (2010).

[36] RAP 14.2.

[37] Id.

relying on facts or evidence not included in the record on appeal are properly raised through a personal restraint petition, not a statement of additional grounds.[38]

We affirm and remand with instructions to strike additional condition of community custody 6, "Do not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer," in appendix 4.2 to the judgment and sentence.[39]

WE CONCUR:

---

[38] State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

[39] CP at 52.