# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54667-1-II |
| Respondent, | |
| v. | |
| BILLY JAMES LINDBERG, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — A jury convicted Billy James Lindberg of one count of possession of a controlled substance and three counts of bail jumping. On appeal, Lindberg argues his possession conviction is void, and that the trial court erred when it allowed the State to impeach him with prior false statements made to police during two different arrests for this case. He also argues that the trial court erred by denying his request to submit a jury instruction on his affirmative defense to bail jumping. The State argues that the trial court correctly allowed Lindberg to be impeached because he "opened the door," and properly excluded the jury instruction because he failed to present a prima facie case on all elements of the affirmative defense.

We affirm Lindberg's bail jumping convictions, reverse the possession conviction, and remand for the trial court to vacate that conviction and resentence.

## FACTS

On May 9, 2017, a police officer discovered Lindberg in a market parking lot after responding to a call of a suspicious vehicle. Lindberg was asleep in his car, which was running and parked in a handicapped parking spot. The officer looked into the car and saw a gun (that

turned out to be a bb gun), and tin foil with a brown substance on it, that Lindberg later confirmed was heroin. The officer woke Lindberg and arrested him. The State charged Lindberg with one count of unlawful possession of a controlled substance pursuant to former RCW 69.50.4013(1) (2017).

Lindberg failed to appear for his arraignment on May 23, and the court issued a warrant. Lindberg did not voluntarily appear or surrender after failing to appear, but was instead arrested on May 27. He later testified that he had failed to appear on May 23 because his girlfriend was going to provide him a ride to court, but that she got into a car accident that damaged a tire and wheel rim on his car. Lindberg also testified that he called pretrial services and was told that he could quash his warrant by appearing at the sheriff's office on the following Tuesday. He planned to visit the sheriff's office to quash it, but he was arrested before he could do so. After this arrest, he was released a second time and required to appear on September 21.

He failed to appear and the court issued another bench warrant. Again, he did not voluntarily appear or surrender and was instead arrested on October 1. He later testified that he had failed to appear on September 21 because two large trees fell in his driveway and blocked his access to his car. He did not attempt to find an alternative means of traveling to court. When police contacted Lindberg on October 1 to arrest him, he initially provided a false name to avoid arrest. He was released a third time.

In January 2018, Lindberg violated his release conditions by testing positive for unprescribed drugs. The trial court issued a bench warrant, but such warrant did not cancel previously scheduled court hearings, including an omnibus hearing scheduled for February 22. Lindberg failed to appear for that hearing. He later testified that he missed his court date because he was in Spokane at a funeral on the February 22 court date, that his car broke down, and that

there was snow on the roads preventing his return to the Olympia area. He then testified that the funeral was actually on February 1.

On July 15, 2019, police stopped a vehicle Lindberg was traveling in. Police detained Lindberg, who provided a false name to avoid arrest. The police recovered controlled substances from Lindberg, but that evidence was later suppressed when the trial court determined Lindberg's July 15 arrest was unconstitutional. The State amended Lindberg's charges to add three counts of bail jumping stemming from his failures to appear on September 21, 2017, February 22, 2018, and May 23, 2018.

During trial, Lindberg testified that he was not trying to avoid responsibility for the heroin charge. He testified, about why he had traveled to the market where he was initially contacted while asleep in the driver's seat. Lindberg had trouble remembering why he had visited the market, but said "I'm trying to be honest here, I really am." 1 Report of Proceedings (RP) at 376. The State then asked him, "Are you an honest person," to which Lindberg responded "I am." 1 RP at 377.

Later the State reminded Lindberg that he had stated he was an honest person, and went on to ask why he had provided a false name during his September 2017 arrest. Lindberg objected, claiming the question and answer were improper under ER 404, but the court overruled the objection. The State also asked Lindberg what name he had provided during his July 2019 arrest, and Lindberg objected, arguing that the court had ruled that the arrest was unconstitutional. The court sustained the objection. The State rephrased the question and asked, "You didn't want to be arrested again when the police contacted you, so you gave them a false name, correct?" 1 RP at 421. Lindberg objected again but the trial court overruled the objection and allowed him to answer; he replied "correct." 1 RP at 421.

Lindberg moved for a mistrial based on the State's questioning. The trial court denied Lindberg's motion for a mistrial, concluding that Lindberg "opened the door" to the prior inconsistent statements when he stated he was honest and had not attempted to evade arrest. 2 RP at 448-49. The court also commented that whether Lindberg was in fact avoiding responsibility was made a central issue by the defense. The court recognized that Lindberg's conduct in providing a false name was probative of whether he was trying to avoid responsibility for the heroin charge. The court stated that the evidence was admissible under ER 404 for the purpose of showing that Lindberg knowingly failed to surrender and that its probative value outweighed its prejudicial effect.

Prior to conferencing on jury instructions, Lindberg proposed an instruction for the affirmative defense to bail jumping as to all three bail jumping charges. The trial court refused to submit the instruction to the jury, concluding that Lindberg had not made a prima facie case supporting that defense. The court relied on *State v. Van Buren*, No. 49866-9-II, (Wash. Ct. App. Feb. 27, 2018) (unpublished), https://www.courts.wa.gov/opinions/, in its ruling, concluding that Lindberg's reasons for failing to appear did not meet the definition of uncontrollable circumstances.

The jury convicted Lindberg of one count of unlawful possession and three counts of bail jumping. Lindberg appeals his convictions.

ANALYSIS

I.    POSSESSION CONVICTION

In a recent decision, this state's Supreme Court held former RCW 69.50.4013 void because its lack of a mens rea requirement violates the due process clauses of the Washington and United States Constitutions. *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021). The court vacated

Blake's conviction. *Id*. Any conviction based on that statute is also invalid because a judgment and sentence is invalid on its face when a defendant is convicted of a nonexistent crime. *See In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004).[1]

In a supplemental brief, Lindberg argues that his possession charge is invalid due to *Blake*. The State concedes this issue. Because Lindberg was convicted under former RCW 69.50.4013(1) and *Blake* held that statute is void, we reverse and remand to the trial court to vacate the conviction, recalculate the offender score on his remaining convictions, and resentence Lindberg.

II.     IMPEACHMENT

Lindberg argues that the trial court erred when it allowed the State to impeach him with a prior false statement that he made to a police officer. Lindberg also argues that the trial court abused its discretion when it denied his motion for a mistrial after it admitted his false statement. We disagree.

A.     Standard of Review

We review a trial court's evidentiary decisions for an abuse of discretion. *State v. Martinez*, 196 Wn.2d 605, 614, 476 P.3d 189 (2020). An abuse of discretion arises if the trial court's decision is manifestly "'unreasonable or . . . based on untenable reasons or grounds. *State v. Arredondo*, 188 Wn.2d 244, 256, 394 P.3d 348 (2017) (internal quotation marks omitted) (quoting *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007)).

B.     Legal Principles

Relevant evidence is generally admissible, unless "otherwise provided by . . . [the] rules [of evidence]." ER 402. But even prohibited evidence will be allowed if a witness "opens the

---

[1] Lindberg's bail jumping charges are not invalid as a result of *Blake*. In *State v. Downing*, 122 Wn. App. 185, 192-93, 93 P.3d 900 (2004), this court determined that bail jumping is a separate offense and persists even if a defendant's underlying charges are dismissed.

door." *State v. Jones*, 26 Wn. App. 1, 9, 612 P.2d 404 (1980). "'It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it.'" *Id*. (quoting *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969)). "In general, a witness's prior statement is admissible for impeachment purposes if it is inconsistent with the witness's trial testimony." *State v. Newbern*, 95 Wn. App. 277, 292, 975 P.2d 1041 (1999). When testifying, a defendant may be impeached by their prior inconsistent statements. *State v. Garland*, 169 Wn. App. 869, 885, 282 P.3d 1137 (2012). Even a defendant's suppressed statements may be used to impeach. *State v. Borsheim*, 140 Wn. App. 357, 371, 165 P.3d 417 (2007).

C.      Analysis

While Lindberg argues that ER 404(b) disallowed admission of his giving a false name to a police officer, admissibility under ER 404(b) is not the question at all. If Lindberg opened the door to the subject of his honesty, the trial court had discretion to allow questioning regarding that honesty. And Lindberg opened the door here.

Lindberg first testified that he was not trying to avoid responsibility for possessing heroin. A clear presentment that he has character for submitting to authority and taking personal responsibility when he has done wrong. He then testified "I'm trying to be honest here, I really am." 1 RP at 376. This was a clear presentment of his honest character[2] to the jury. The prosecutor then asked Lindberg, without objection, whether Lindberg was an honest person, to which he responded "I am." 1 RP at 377. Lindberg made his honesty an issue in the trial. The trial court had discretion to allow the State to elicit his prior lie in an attempt to evade arrest. The trial court's

---

[2] We need not engage in an analysis of the admissibility and manner of establishing character here because Lindberg himself spoke to his own character for honesty (or truthfulness).

6

ruling that he had opened the door was not manifestly unreasonable or based on untenable grounds or reasons; its ruling was not an abuse of discretion.

III.    JURY INSTRUCTION ON DEFENSE TO BAIL JUMPING

Lindberg argues that the trial court erred by denying his proposed jury instruction that uncontrollable circumstances, an affirmative defense to bail jumping, prevented him from attending his court dates. We disagree.

A.    Standard of Review

When a trial court determines no prima facie evidence supports a jury instruction as a matter of law, we review such decision de novo. *State v. Fisher*, 185 Wn.2d 836, 849, 374 P.3d 1185 (2016).

B.    Jury Instructions Legal Principles

"A defendant in a criminal case is entitled to have the jury fully instructed on the defense theory of the case." *State v. Staley*, 123 Wn.2d 794, 803, 872 P.2d 502 (1994). A trial court commits reversible error if it refuses to give an instruction that correctly states the law and is supported by the evidence. *State v. Green*, 182 Wn. App. 133, 152, 328 P.3d 988 (2014). The trial court may deny a request for an affirmative defense jury instruction only where a defendant has failed to introduce evidence that supports it. *Fisher*, 185 Wn.2d at 849. "To determine whether evidence supports giving an instruction, a court should consider the defendant's testimony and the inferences that can be drawn from it." *State v. Arbogast*, 15 Wn. App. 2d 851, 875, 478 P.3d 115 (2020), *review granted*, 197 Wn.2d 1007 (2021). Failure to provide a jury instruction that is supported by prima facie evidence is reversible error. *Id*. at 869.

C.      Bail Jumping Legal Principles

Under former RCW 9A.76.170(1)(a) (2001), a person commits bail jumping if they "[are] released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state."

The legislature provided an affirmative defense to bail jumping when a defendant can prove that uncontrollable circumstances prevented his appearance. Former RCW 9A.76.170(2). The defendant must show (1) "uncontrollable circumstances prevented [him] from appearing or surrendering," (2) he "did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender," and (3) he "appeared or surrendered as soon as such circumstances ceased to exist." Former RCW 9A.76.170(2).

RCW 9A.76.010(4) defines "uncontrollable circumstances" as "an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of a human being such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts."

D.      Analysis

We conclude that the trial court properly denied Lindberg's request for an affirmative defense jury instruction as to his May 23, September 21, and February 22 bail jumping charges.

1.      May 23 Charge

For his May 23 failure to appear, Lindberg testified that a car accident damaged his car and prevented him from driving to court. Thus, he provided prima facie evidence that he satisfied the first element of the affirmative defense to his May 23 bail jumping charge. Lindberg also testified

that his girlfriend was driving the car, and therefore he provided prima facie evidence that he did not contribute to the car accident.

However, Lindberg failed to present prima facie evidence that his conduct satisfied the third element of the affirmative defense because he did not appear or surrender as soon as he could find another way to court. Instead, he testified that he called pretrial services, was informed he could quash the warrant by appearing the following Tuesday, but was arrested before he could do so. Waiting for a future date to quash the warrant, when he could have surrendered immediately, fails to satisfy the third element of the affirmative defense, which requires that a person "appear[] or surrender[] as soon as such circumstances cease[] to exist." Former RCW 9A.76.170(2). We conclude that the trial court appropriately excluded the affirmative defense jury instruction for his May 23 charge.

2.	September 21 Charge

Lindberg similarly failed to provide prima facie evidence of the third element of the affirmative defense for his September 21 bail jumping charge. He testified that his failure to appear in September was a result of two large trees falling across his driveway. While acts of nature are expressly listed as potential uncontrollable circumstances, and Lindberg may have had nothing to do with trees falling across his driveway (which is unaddressed in the record), he again failed to appear or surrender to the court after the circumstance abated. *See* RCW 9A.76.010(4). He failed to make the required prima facie showing to justify the affirmative defense instruction regarding his September 21 charge.

3.	February 22 Charge

Lastly, Lindberg failed to make a prima facie showing on the third element of the affirmative defense to the February 22 bail jumping charge. He testified that he missed his

9

February 22 appearance because he was in Spokane attending a funeral on February 1, his car broke down, and there was snow on the roads preventing his return to the Olympia area. Acts of nature like snowstorms are expressly listed as potential uncontrollable circumstances. RCW 9A.76.010(4). As to the second element, Lindberg had no hand in causing a snowstorm. However, Lindberg failed to provide prima facie evidence of his appearance or surrender as soon as he returned. *See* RCW 9A.76.010(4). He failed to make the required prima facie showing for all elements of the affirmative defense to this charge as well. The trial court did not err in denying the affirmative defense instruction regarding the February 22 charge.

Lindberg failed to provide prima facie evidence on all elements of the affirmative defense, for all three bail jumping charges.

## CONCLUSION

We affirm Lindberg's bail jumping convictions, reverse the possession conviction, and remand for the trial court to vacate that conviction and resentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, A.C.J.

Cruser, J.